# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN STEPHEN OLFORD,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:16-cv-0061-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Justin Olford ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

On, September 21, 2011, Plaintiff filed his application for supplemental security income alleging disability beginning on October 1, 2010. AR 14, 226-31, 244. The agency denied Plaintiff's

claims initially and upon reconsideration. AR 14, 162-66, 173-78. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 14, 179-81. On January 30, 2014, the ALJ held a hearing, and issued an order denying benefits on June 11, 2014. AR 14-32. Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied making the ALJ's decision the final decision of the Commissioner. AR 1-5, 9-10. Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

**Statement of Facts**

Born on October 12, 1986, Plaintiff was 24 years old at the time of the administrative hearing. AR 42. In Plaintiff's initial application for disability benefits, he primarily asserted disabling mental impairments including: autism spectrum disorder, generalized anxiety disorder, depression, attention deficit hyperactive disorder (ADHD), and cognitive executive processing impairment. AR 47, 248. At the administrative hearing, Plaintiff testified that he graduated from high school after twice failing math his freshman and sophomore years. AR 44. He does not have a college education or any military or vocational training. AR 45. He has a minimal work history limited to brief periods of employment working in restaurants and teaching percussion. AR 46.

Plaintiff has seen several psychiatrists over the years and is currently taking a variety of anxiety and depression medications, but he is not currently treating with a psychotherapist. AR 60. He testified that he has a history of illegal drug use including abusing opiate type drugs such as Vicodin, OxyContin, morphine, methadone, and heroin. AR 50. As of the hearing in January, Plaintiff had not used drugs for five (5) months. AR 50. In addition to anxiety, Plaintiff testified that he has suffered from memory problems ever since his "wet reckless" motor vehicle accident. AR 53. Following the accident, he was immediately arrested and booked into jail before he could receive proper medical treatment possibly causing further brain injury. AR 53.

In a normal day, Plaintiff testified that he spent a lot of time with his dogs; he could perform chores around the house such as vacuuming, mopping or sweeping, washing dishes, and simple yard work. AR 54-55. He enjoys music and playing drums, he generally gets along with people "very well," and attends Alcoholics Anonymous ("AA") meetings once a month. AR 54-56.

At the conclusion of the hearing, the ALJ heard testimony from a vocational expert who, based on the limitations adopted by the ALJ, stated Plaintiff could perform work as it exists in the national economy. AR 76-77.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 14-32. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since September 21, 2011, the application date. AR 16. Further, the ALJ identified polysubstance abuse, attention deficit disorder (ADHD), depressive disorder and obsessive compulsive disorder as severe impairments. AR 16. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 16-17.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he is able to perform simple, routine tasks with limited contact with the public and occasional interaction with coworkers. AR 18. The ALJ found that although Plaintiff had no past relevant work there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 31-32. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 32.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the

evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff challenges whether the ALJ erred by (1) improperly weighing his treating physicians' opinions and (2) rejecting his subjective symptom testimony and the lay testimony of his parents.

## DISCUSSION[1]

**1.     Plaintiff's Treating Physicians – Drs. Giesbrecht, Davidson, and Henslin**

In his first issue, Plaintiff argues that the ALJ failed to articulate adequate specific and legitimate reasons for rejecting the opinions of three of his treating physicians.

**A.     Dr. Giesbrecht's Treating Opinion**

Plaintiff began monthly treatments with psychiatrist Mark Giesbrecht, M.D. in November 2010. In December 2011, Dr. Giesbrecht opined Plaintiff was unable to work from a psychiatric point of view. AR 495. In January 2012, Dr. Giesbrecht opined Plaintiff's mental functioning was poor in a

---

[1]     The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

4

number of areas, including his ability to concentrate for at least two-hour increments and withstand the stress associated with a normal workday. AR 579. Plaintiff's ability to relate and interact with co-workers and supervisors was impaired, his prognosis was poor, and his response to treatment had been fair. AR 579.

In weighing Dr. Giesbrecht's opinion, the ALJ found as follows:

> I have given very little weight to the opinion expressed several times by Dr. Giesbrecht. The evidence shows that the claimant's problems began when he graduated high school and increased his usage of alcohol and began or increased his usage of drugs. As the doctor's records show, in February 2011, claimant had improved substantially while clean and sober. Dr. Giesbrecht has afforded the claimant greater credibility than I have regarding his periods of abstention from drugs and alcohol. It is clear the claimant's problems relate to his addiction to drugs and alcohol. When he stays away from them, he is considerably different and functions considerably better. His daily activities are inconsistent with the disability described by Dr. Giesbrecht and claims by the claimant. [ ] Clearly, when the claimant abstains from drugs, he is able to function quite well.

AR 24.

### B. Dr. Davidson's Treating Opinion

Ronald J. Davidson, M.D began treating Plaintiff in March 2014. On March 14, 2014, Plaintiff underwent psychometric testing at the request of Dr. Davidson who subsequently examined Plaintiff on March 22 and April 16, 2014. AR. 894-914. Dr. Davidson observed Plaintiff was very anxious, expansive, garrulous, demoralized, and psychologically regressed. AR 913. Dr. Davidson's examination of Plaintiff revealed paranoid ideation, stuttering, flight of ideas, pressured speech, and impaired judgment. AR 913. Based on his examinations, Dr. Davidson diagnosed Bipolar II Disorder, Opioid Dependency, Generalized Anxiety Disorder, Pathological skin picking, Attention Deficit Disorder, Hoarding Disorder and Borderline Personality Disorder with Narcissistic, Dependent, Obsessive-Compulsive, Anti-social and Paranoid Features. AR 910-913.

Dr. Davidson also opined that Plaintiff had previously been misdiagnosed and that because his Bipolar Disorder and Personality Disorder had long been overlooked, it had worsened. AR 914. He indicated he had started treating Plaintiff with mood stabilization. AR 914. Dr. Davidson also opined that Plaintiff was "totally disabled" and unable to engage in gainful employment. AR 914.

The ALJ gave Dr. Davidson's opinion "very little weight" because Dr. Davidson credited Plaintiff with a higher degree of credibility than found by the ALJ. AR 30. The ALJ further found that Plaintiff's activities of daily living were inconsistent with Dr. Davidson's findings. AR 30. The ALJ also concluded that Dr. Davidson failed to credit facts that Plaintiff functioned quite well when abstaining from drugs. AR 30. For those reasons, the ALJ concluded that other medical evidence in the record was more reliable and consistent with the overall longitudinal record.

### C. Dr. Henslin's Treating Opinion

On March 13, 2012, Earl R. Henslin, Psy.D., Plaintiff's treating psychologist, opined Plaintiff was extremely limited in his ability to relate and interact with supervisors and coworkers; understand, remember and carry out simple, technical and complex job instructions, deal with the public, maintain concentration for at least two-hour increments, withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity, and ability to handle funds. AR 368, 496-511. Dr. Henslin opined that addiction was present but Plaintiff's underlying condition was a traumatic brain injury, as revealed by a SPECT scan that showed damage to Plaintiff's prefrontal cortex, temporal lobes and cerebellum. AR 368-69, 496-511. Dr. Henslin opined Plaintiff's diagnoses also included Bipolar Syndrome with paranoid thinking and Anxiety Disorder. AR 370-71.

The ALJ evaluated Dr. Henslin's opinion as follows:

> The doctor says the claimant cannot relate and interact with coworkers, supervisors, or the public. (He gets along with family, has friends and a girlfriend. He deals with people when he shops in stores, and deals with people when he is buying non-prescribed medications and/or illicit drugs). The doctor says the claimant cannot understand, remember, or carry out simple one-or-two step job instructions. (He can maintain a driver's license, drive an automobile, travel alone, obtain certification as a forklift driver and care for pets.) Dr. Henslin says the claimant cannot maintain concentration and attention in two-hour increments. He plays video games for hours). After each extreme limitation stated by the doctor, I have noted one or more of the claimant's activities of daily living that are inconsistent with the extreme limitations Dr. Henslin has listed. There are several pages of "Check the Boxes" relating to symptoms or limitations, and the doctor has checked every box that appears on the forms.

AR 26.

### D. The ALJ Correctly Weighed the Treating Physician Evidence

Given the above statements by the ALJ, the Court is persuaded that the ALJ provided adequate specific and legitimate reasons for discounting the opinions of Plaintiff's treating physicians Drs. Giesbrecht, Davidson, and Henslin. This Court's decision is grounded on three reasons.[2]

First, the ALJ found that Plaintiff's treating physicians based their opinions, in part, on Plaintiff's subjective statements, which were not entirely credible. AR 30. A treating physician's opinion based on subjective complaints of a claimant whose credibility has been discounted can be properly disregarded. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In discounting Dr. Davidson's opinion, the ALJ pointed to several findings relied on by Dr. Davidson that were unreliable based on Plaintiff's credibility. Dr. Davidson noted that Plaintiff experienced problems with assignments after high school even though he "said he was not on drugs when he went to Fresno City College." AR 29. The ALJ noted however that "the evidence is that the claimant attended City College after graduating high school, and that is when his addictions developed and his parents noted changes and noted something wrong." AR 29. The ALJ also found that Dr. Davidson erred in relying on the personality inventory administered by Dr. Butcher because while Dr. Butcher noted that Plaintiff exaggerated his responses therefore invalidating portions of the test, Dr. Davidson found the personality inventory valid and consistent with a severe bipolar disorder and personality disorder. AR 29. Overall, the ALJ found that Dr. Davidson gave Plaintiff a higher degree of credibility than found by the ALJ. This was a proper reason to reject Dr. Davidson's opinion.

Likewise, when evaluating Dr. Henslin's opinion the ALJ noted that Dr. Henslin credited Plaintiff's statements that he cannot relate and interact with coworkers, supervisors, or the public despite credible evidence in the record that Plaintiff gets along with family, has friends and a girlfriend. AR 26. The ALJ thus properly concluded that the opinions of the treating physicians were undermined by Plaintiff's lack of credibility.

---

[2] The Court analyzes the three treating physician's opinions together as the overall specific and legitimate reasons the ALJ provided for rejecting that evidence is largely applicable to all three opinions by Plaintiff's treating physicians.

Second, the ALJ properly found that Plaintiff's daily activities far exceeded the label of total disability given by Plaintiff's treating physicians. An ALJ properly may consider conflicts between a treating physician's opinion and a claimant's daily activities. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion).

The ALJ properly found that Dr. Giesbrecht's opinion was inconsistent with Plaintiff's ability to perform significant daily activities. AR 24. While Dr. Giesbrecht found that Plaintiff was impaired in his ability to get along with others, had a poor ability to pay attention for at least two-hour increments, and a poor ability to carry out simple instructions, Plaintiff drove an automobile; played video games for hours at a time; maintained friendships; had a girlfriend; took care of pets and spent time with them; shopped for things he wanted such as cigarettes, ice cream, and illegal drugs; and completed high school without special education. AR 30, 44. Plaintiff's daily activities were in further contrast with Dr. Henslin's findings that Plaintiff could not relate and interact with coworkers, supervisors, or the public and Dr. Davidson's opinion that Plaintiff's inability to function rendered him "totally disab[ed]" AR 30.

A material inconsistency between a treating physician's opinion and a claimant's admitted level of daily activities can furnish a specific, legitimate reason for rejecting a treating physician's opinion. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Plaintiff's self-reported daily activities were in direct conflict with the treating physician evidence identified here. The ALJ did not err in either regard.

Third, the ALJ found that undermining the overall treating physician evidence was clear indications that Plaintiff's functional limitations were greatly improved when he was not abusing drugs. AR 26. The ALJ noted that many of the treating physician's findings related to Plaintiff's symptoms while he was struggling with addiction. For example, in assessing Dr. Giesbrecht's opinion

8

the ALJ stated that in February 24, 2011, Dr. Giesbrecht noted that Plaintiff was completing an inpatient program and his parents were drug testing him at home; the tests were clean. AR 23. During this visit, Plaintiff was smiling, generally healthy and his thought process was organized, linear, and goal directed with no paranoia. AR 23. Plaintiff later relapsed in June 2011 and July 2011. AR 23. Following Plaintiff's relapse, Dr. Giesbrecht diagnosed opioid type dependence and then stated "based on the clinical presentation and to the best of my knowledge, this patient is unable to work from a psychiatric point of view. AR 23. The ALJ appropriately discounted these findings because the diagnosis was connected to Plaintiff's addiction and not his overall functioning absent substance abuse. AR 23.

In 2012, Dr. Henslin completed a medical source statement. AR 368, 496-511. He opined that Plaintiff was extremely limited in his ability to relate and interact with supervisors and coworkers; understand, remember and carry out simple, technical and complex job instructions. The ALJ discounted these findings, in part, because while Dr. Henslin concluded that his finding were based on brain scans that showed Plaintiff suffered from a traumatic brain injury, the same report indicated that the results of Plaintiff's brain scan may be reflective of "toxicity due to substance abuse." AR 26, 541. Indeed, Dr. Henslin's records demonstrate that on July 18, 2007, less than one month before Plaintiff's brain scan, Plaintiff's mother indicated that Plaintiff was abusing drugs and in need of detox. AR 20. The ALJ's finding that Dr. Henslin's opinion did not accurately reflect Plaintiff's functioning when he was not abusing drugs is therefore supported by the record.

Plaintiff argues that the ALJ's treatment of the treating evidence is wrongly "tainted by the 'the ALJ's] assumption that his problems were largely cause by substance abuse. (Doc. 25 at 4). However, this was not a meritless assumption but a finding made by the ALJ and Plaintiff's other treating physicians. As acknowledged by the ALJ, Plaintiff's treating psychologist Richard B. King reported in November 2, 2012, that while Plaintiff alleges impairments of "Autism, generalized anxiety, depression, ADHD, cognitive executive processing impairment, and anxiety, his primary difficulties are: (1) heroin addiction; (2) anxiety and possibly obsessive-compulsive disorder. He appears to have a history of excellent function until he began abusing illegal drugs. His prognosis is guarded at this

time because he is continuing his attempts to abstain from drug abuse." AR 27. The ALJ was entitled to weigh this evidence when evaluating the opinions of Plaintiff's treating physicians.

Finally, the ALJ acknowledged that while Plaintiff's treating physicians were "sincere and well meaning mental health professionals" they continue[d] to disagree on the exact diagnoses or diagnoses for [Plaintiff's] difficulties." AR 26. As the ALJ further explained, his "focus is not on the cause or diagnoses, but on the resultant work functional limitations." AR 22. Because of the differing treating opinions and for the reasons stated above, the ALJ instead assigned greater weight to the opinions of the consultative examining physician Dr. Swanson and the State agency psychological experts whose opinions were more consistent with the record as a whole. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Tonapetyan*, 242 F.3d at 1149 (examining physician's opinion alone constitutes substantial evidence because it rests on his own independent examination of the claimant).

Specifically, Dr. Swanson reported normal mental status findings, including that Plaintiff had normal memory functions, intact judgment and insight, and maintained attention and concentration. AR 25, 518. Dr. Swanson also opined that Plaintiff could understand, carry out, and remember simple instructions; respond appropriately to usual work situations, such as attendance, safety, and the like; could maintain concentration and relate appropriately to others in a job setting; did not appear to have difficulties in maintaining social relationships or substantial restrictions in daily activities; and changes in routine would not be very problematic for him. AR 26, 519-20. Moreover, both state agency physicians opined that Plaintiff was not disabled. AR 24, 94, 126. The ALJ properly gave more weight to these opinions because they were supported by other evidence of record, including Plaintiff's daily activities. AR 26. Based on the specific and legitimate reasons opined by the ALJ, the Court will not reverse or remand the ALJ's decision for failure to adopt the opinions of Plaintiff's treating physicians or otherwise weigh the medical evidence.

///

///

## 2. The ALJ's Credibility Determinations

Next, Plaintiff claims that the ALJ erred in assessing his credibility and the credibility of his lay witnesses. (Doc. 18 at 31-33). Remand is not warranted because the ALJ gave appropriate reasons for rejecting the testimony of Plaintiff and the lay witness.

### A. <u>Plaintiff's Credibility</u>

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding his subjective testimony not credible. In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

With respect to Plaintiff's credibility, the ALJ found that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. AR 30. The ALJ supported this conclusion with at least three clear and convincing reasons for rejecting Plaintiff's impairment testimony.

First, the ALJ reasonably rejected Plaintiff's subjective complaints based on his reported daily activities. AR 17-20, 26-27. Despite Plaintiff's allegations that he is unable to concentrate, work well with others, focus, and complete tasks, the ALJ noted that Plaintiff performed household chores, cared for his pets, drove a car, attended AA meetings, went shopping, and spent time with friends and his

11

girlfriend. AR 17-20, 26-27. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ found that the claimant's activities "suggest that she is quite functional" where claimant was able to care for her own personal needs, shop, and interact with her nephew and her boyfriend despite both physical and mental impairments); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("The ALJ also pointed out ways in which [the claimant's] claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week"). The ALJ also noted that Plaintiff played video games for hours at a time and completed high school without special education, all in stark contrast to Plaintiff's alleged disabling functions. AR 30. It was proper for the ALJ to consider these daily activities in discounting Plaintiff's credibility.

Second, in evaluating Plaintiff's credibility, the ALJ found that the nature of Plaintiff's past criminal convictions detracted from his overall credibility. *See generally Light*, 119 F.3d at 792 (holding that a claimant's reputation for truthfulness is a valid consideration for an ALJ to use in determining that claimant's credibility) (citations omitted). An ALJ may rely on a claimant's convictions for crimes of moral turpitude as part of a credibility determination. *See Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D.Cal.2007) ("convictions involving moral turpitude ... are a proper basis for an adverse credibility determination"). Here, the ALJ noted that Plaintiff had criminal convictions for theft, burglary, and fraud. AR 31, 691. The ALJ also found that, in addition to his convictions, Plaintiff stole from his parents. AR 21. It was not error for the ALJ to conclude that Plaintiff's convictions for theft and fraud clearly implicated Plaintiff's reputation for honesty.

Likewise, in also finding that Plaintiff lacked credibility, the ALJ provided a third reason; Plaintiff provided inconsistent statements that demonstrated that he was less than candid. *See Smolen*, 80 F.3d at 1284 ("ordinary techniques of credibility evaluation" may be considered, such as prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid."). Here, the ALJ noted that while Plaintiff testified that he has no vocational training, he previously told a doctor that he had obtained a certification as a forklift driver. AR 31,

12

501. The ALJ also identified that Plaintiff had a history of being "less than fully credible" regarding his use of drugs and alcohol. AR 31. Plaintiff's lack of candor was a valid consideration by the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 n. 5 (9th Cir.1989).

The Court finds the ALJ's credibility determination to be sufficiently specific and free of error. Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Therefore, Plaintiff's challenge on this ground fails.

## B. Lay Witness Testimony

Plaintiff also challenges the rejection of his father Jonathan Olford's "Confidential Psychological Report" as a lay witness statement. AR 24-25, 582-589, 852-853. Plaintiff faults the ALJ for rejecting Dr. Olford's statements because he had a familial and monetary interest in Plaintiff's case.

An ALJ must take into account competent lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citation omitted). A lay witness can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis,* 236 F.3d at 511; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512. Further, "inconsistency with medical evidence is another such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ summarized Dr. Olford's lay testimony as follows:

> On November 11, 2011, the claimant's father, a licensed psychologist, wrote a letter of over seven pages, calling it a 'psychological report" and stating he was reporting on a consultation. He said his purpose was to show that his son had only very recently received an accurate diagnosis, Autism spectrum disorder. Dr. Olford then gives a lengthy and detailed history of not only the claimant's difficult journey through the

13

horrendous problems that come with substance abuse and addiction, but the heartbreaking and almost unimaginable difficult path his parents have traversed. Among other worries, the claimant's mother noted they had the specter of possible death by overdose. The claimant's use of drugs has been a nightmare for his entire family.

On January 26, 2014, Dr. Olford wrote what he called a report for Dr. Victoria Ibric, M.D., Ph. D. regarding a QEEG Brain mapping and Neurofeedback Treatment said to confirm traumatic brain injury.[]

While I can sympathize with Dr. and Mrs. Olford, and their seemingly endless and difficult journey, my task is simply and clearly limited. I must decide what medically determinable impairments the claimant has, and what limitations in working function the impairments cause. I must then decide whether there exist in the national economy a significant number of jobs a person with those limitations can perform. In deciding these issues, precise and exact diagnosis or labeling of symptoms is less important than finding what physical or mental limitations, if any, affect the claimant's ability to function in the workplace.

Dr. Olford does have a familial interest in the matter, as the claimant is the doctor's son. The doctor has a monetary interest, as he and his wife are supporting the claimant. The doctor has not stated an opinion as to the level of work his son could do, but implicit in his letter in the idea that his son is disabled. Under the Social Security Act, the Social Security Administration reserves to itself the decision as to whether a claimant is disabled. Dr. Olford does not discuss the claimant's residual functional capacity. For these reasons, I have given the opinion no weight on the issue of the claimant's residual functional capacity.

AR 25.

Here, the ALJ discounted Dr. Olford's statements, in part, because "Dr. Olford does have a familial interest in the matter, as the claimant is the doctor's son. The doctor [also] has a monetary interest, as he and his wife are supporting the claimant." AR 25. While Plaintiff is correct that an ALJ cannot reject lay witness testimony based solely on a familial or financial basis, the ALJ provided additional germane reasons to reject Dr. Olford's testimony. S*ee Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (fact that spouse may be "interested party" was not germane reason for rejecting testimony); *Rabadi v. Astrue*, 283 F. App'x 521, 523 (9th Cir. 2008) (cited for its persuasive value pursuant to Ninth Circuit Rule 36-3) (when family members had "ample opportunity" to observe claimant, their testimony about his symptoms may not be disregarded solely based on

"familial relationship" or "potential financial interest"); *Quinones v. Colvin*, No. CV 12-3017 AN, 2013 U.S. Dist. LEXIS 40845, at *33-34 (C.D. Cal. Mar. 13, 2013).

At the outset, the Court rejects Plaintiff's argument that the ALJ erred in discrediting the lay testimony based on the familial relationship given the specific circumstances presented here. In weighing Dr. Olford's statements, the ALJ rejected in part, the letter drafted by Dr. Olford and submitted on behalf of treating physician, Victoria Ibric M.D. AR 852. In the letter, Dr. Olford states, "I am writing this report for Dr. Victoria Ibric due to her cataract surgery and current bout with the flu, and on behalf of my son, Justin S. Olford who received treatment from Dr. Ibric and who has authorized me to write this report on her behalf." AR 852. Dr. Olford goes on to analyze the "QEEG Brain Mapping and Neuro Feedback Treatment" Plaintiff received from Dr. Ibric and diagnose Plaintiff's "TBI Severity Index" noting that Plaintiff's "score on this scale placed him in the moderate range of severity." AR 852.

Dr. Olford's opinions on behalf of Dr. Ibric were therefore not his own lay observations of Plaintiff, but Dr. Olford's attempt to otherwise bolster his lay testimony by holding himself out as a medical expert. Therefore, to the extent that Dr. Olford—Plaintiff's father—was attempting to provide a treating opinion on behalf of Dr. Ibric, the ALJ was correct to discount that opinion based on the obvious conflict of interest presented by the familial and financial interest. An ALJ does not have to ignore the possibility that financial concerns or a "close relationship" with Plaintiff influenced a witness's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Under theses circumstances, the ALJ permissibly considered Dr. Olford's financial and familial interest in helping his son obtain benefits, along with other factors, in evaluating the credibility of his statements.

Second, the ALJ properly found that beyond Dr. Olford's statements of various medical diagnoses and his outline of Plaintiff's treatment history, the letter amounted to an assertion that Plaintiff is disabled, which is a legal conclusion reserved for the ALJ. 20 C.F.R. § 416.927(e) (stating that the Commissioner is responsible for making a determination as to whether a claimant meets the statutory definition of disability); *see Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (stating that an opinion as to the ultimate issue of disability is not conclusive). This was a germane reason to discount the lay testimony.

Finally, even if the ALJ erred by commenting on the familial and financial nature inherent in Plaintiff's familial relationship, the Court finds this error harmless because Dr. Olford's statements do not describe any limitations beyond those already alleged by Plaintiff himself. Dr. Olford states that Plaintiff struggles with time-management, memory, focus, concentration and interpersonal relationships. The severity of these subjective symptom allegations were explicitly rejected by the ALJ based on Plaintiff's ability to play video games for hours at a time, maintain relationships with friends and a girlfriend and shop and do chores when he wants to. AR 27. *Molina*, 674 F.3d at 1121-22 (error with respect to lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits lay witness' claims).

Accordingly, a remand or reversal is not warranted on this issue.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Justin Stephen Olford.

IT IS SO ORDERED.

Dated: **September 11, 2017**         /s/ *Barbara A. McAuliffe*
                                      UNITED STATES MAGISTRATE JUDGE